THIS DISPOSITION
IS CITABLE
AS PRECEDENT OF
THE TTAB

Mailed: 15 JAN 2003
Paper No. 19
AD

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Los Angeles Police Revolver and Athletic Club, Inc.

————

Serial No. 75786737

————

Tawnya R. Wojciechowski of Sheppard, Mullin, Richter & Hampton LLP for the Los Angeles Police Revolver and Athletic Club, Inc.

Angela M. Micheli, Trademark Examining Attorney, Law Office 108 (David Shallant, Managing Attorney).

————

Before Hohein, Bucher and Drost, Administrative Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On August 27, 1999, the Los Angeles Police Revolver and Athletic Club, Inc. (applicant or LAPRAAC) applied to register on the Principal Register the mark now identified as TO PROTECT AND TO SERVE (in typed form) for goods ultimately identified as "Beverage glasses" in International Class 21 and "Clothing, headwear and

footwear, namely police and public safety uniforms, vests, jackets, coats, foul weather gear, raincoats, overcoats, gloves, gym suits, jerseys, socks, t-shirts, shirts, shorts, pants, sweatsuits, ties, swimwear, trousers, sweaters, pullovers, raincoats, boots, shoes, belts, caps, sun visors, and headbands" in International Class 25.  The application (Serial No. 75786737) contains an allegation of a date of first use and a date of first use in commerce of at least as early as 1984.

The examining attorney[1] ultimately refused to register applicant's mark on two grounds.  First, the examining attorney held that applicant's mark falsely suggests a connection with the Los Angeles Police Department (LAPD) and therefore the mark is unregistrable under Section 2(a) of the Trademark Act.  15 U.S.C. § 1052(a).  The examining attorney also refused registration on the ground that applicant is not the owner of the mark under Section 1 of the Trademark Act.  15 U.S.C. § 1051.

After the examining attorney made the refusals to register final, this appeal followed.

---

[1] The current examining attorney was not the original examining attorney in this case.

We set out the following facts from the record that are primarily gleaned from applicant's and the LAPD's websites.

The LAPD was organized in 1869.[2] The LAPRAAC was formed in 1925. It consisted of sworn members of the LAPD and it opened a pistol range in Elysian Park.[3] "As the main funding source of the Los Angeles Police Department athletic program, LAPRAAC's goal is to promote physical fitness, at the same time sponsoring activities that reduce stress and foster camaraderie and an esprit de corps among police officers."[4] "LAPRAAC's membership represents more than 95 percent of the active and retired LAPD."[5]

In 1932, the Olympics were held in Los Angeles. "The Olympic Committee obtained permission to use the [LAPRAAC] range for the pistol and rifle competition. When the games were over, the Department was given the dormitory building. The structure, which had been used at the Olympic village, was dismantled and transported to the Elysian Park site by off-duty officers, and then reassembled for use as a clubhouse."[6]

---

[2] General History of the LAPD, p. 2.
[3] LAPD website, "The LAPD Police Academy has a rich history," p. 16.
[4] LAPRAAC brochure, p. 3.
[5] Id.
[6] LAPD website, "The LAPD Police Academy has a rich history," pp. 17-18.

"As the years progressed, a symbiotic relationship developed between the City and LAPRAAC to provide training and recreational facilities for sworn (training & recreational) and civilian (training) members of the Department."[7]

> The importance of police officer training became obvious and the LAPD (City of Los Angeles) took it upon themselves to move the Training Division into the LAPRAAC facility. The year was 1936. It was at this point in time that a relationship between the LAPRAAC and the City of Los Angeles was established. Handshake agreements were made by both parties that in effect, the City would take over all police officer training and LAPRAAC would permit the City to use all of it[s] available buildings. In return, the City took on the responsibility of grounds, maintenance, and facility security. The LAPRAAC bylaws were amended to include the Conunanding [sic] Officer of Training Division as the Operations Officer of LAPRAAC. This gave the city a voice in LAPRAAC operations. The spirit of cooperation that exists between the Training Division and LAPRAAC has been cultivated for more than 60 years.[8]

In 1955, "To Protect and to Serve" became the official motto of the Police Academy and on "November 4, 1963, the Los Angeles City Council passed the necessary ordinance, and the credo has now been placed alongside the City Seal on the Department's patrol cars."[9]

---

[7] LAPRAAC: Traditions, p. 1.
[8] LAPRAAC: Traditions, p. 2.
[9] LAPD website, "To Protect and to Serve," p. 1.

The LAPRAAC identifies itself as "the history, the social outlet, the fitness [arm] of the Los Angeles Police Department." It says it is "also known as the Los Angeles Police Academy … [and] is a private club which was established over 60 years ago by Los Angeles Police Officers as a training facility."[10]

The LAPD telephone directory has listings for LAPRAAC in its "Training Division" section under the Elysian Park Facility and the Ahmanson Recruit Training Center.

The LAPD website in its Q&A section asks the following question: "How can I obtain an item with an LAPD logo on it such as a badge, shoulder patch, hat, pin or T-Shirt?" The answer is: "Due to budgeting and security constraints, The Los Angeles Police Department is unable to provide any uniform items to the public. However, shoulder patches and other memorabilia may be purchased in person by visiting the Los Angeles Police Revolver and Athletic Club (L.A.P.R.A.A.C.) located at the Los Angeles Police Academy."

The LAPD website also indicates that in 1932, the Olympic Committee "searched for a suitable location to conduct the pistol competition. They discovered an

---

[10] LAPRAAC: "About" website.

5

improvised range in Elysian Park used by Los Angeles police officers for informal shooting practice.  The organizers built a range to accommodate the needs of the Olympics and, at the conclusion of the games, donated the range to the Los Angeles Police Revolver and Athletic Club.  Over the years, other buildings and ranges have been added.  Since the 1950's, the Training Academy in Elysian Park has been used for the majority of the training."[11]

The examining attorney argues that:

> The evidence of record shows that the mark is the official motto of the Los Angeles Police Department. It shows neither the city of Los Angeles nor the Los Angeles Police Department is connected to the goods sold.  It shows the city of Los Angeles and its police force are well known and a connection between them and the applicant's mark would be presumed.

Examining Attorney's Brief at 5.

We begin our analysis of the "falsely suggests a connection" issue by setting out the relevant test.

> The test for determining the propriety of a refusal to register based on Section 2(a) has four elements.  The mark (or part of it) must be shown to be the same as or a close approximation of the person's previously used name or identity, and it must be established that the mark would be recognized as such (i.e., the mark points uniquely to that person).  Further, it must be shown that the person in question is not connected with the goods or services of the applicant, and the person's name or identity must be of sufficient fame that when it is used as part or all of the mark on applicant's goods/services, a connection with that person would be presumed by someone considering

---

[11] LAPD "History of the Training Division" website.

purchasing the goods/services. Buffett v. Chi-Chi's, Inc., 226 USPQ 428 (TTAB 1985).

In re Sloppy Joe's International Inc., 43 USPQ2d 1350, 1353 (TTAB 1997).

There is no real dispute that applicant's mark is the same as the official LAPD slogan, nor is there any dispute as to the fact that the slogan is well known and associated with the LAPD. The essential matter in dispute in this case is whether there is a connection between applicant and the LAPD. The examining attorney insists that the record does not show that there is such a connection with respect to the goods sold.

In the Sloppy Joe's case, the board held that Ernest "Hemingway's friendship with the original owner of Sloppy Joe's bar, his frequenting the bar and use of the back room as an office is not the kind of 'connection' contemplated by Section 2(a). Rather, a commercial connection, such as an ownership interest or commercial endorsement or sponsorship of applicant's services, would be necessary to entitle applicant to register the involved mark." 43 USPQ2d at 1354. The board also found that Hemingway's purported claim of co-ownership of the bar was "mere folklore." Id.

7

We have an entirely different situation in this case. The websites and other literature of the LAPRAAC and LAPD demonstrate that the two entities have had an extensive mutual relationship for decades. This relationship involves LAPD's use of LAPRAAC facilities in exchange for LAPD services such as maintenance and security. The relationship is so close that applicant claims that the Los Angles Police Academy was also known as the LAPRAAC. Reply Brief at 3. While we find that the evidence is not entirely clear that the Police Academy was interchangeable with the LAPRAAC, it is apparent that the Police Academy has been located on the LAPRAAC grounds for decades and the LAPRAAC was associated with the training of LAPD officers.

Furthermore, the LAPD's own website supports applicant's argument that the "connection has been both publicly acknowledged and endorsed by both parties." Reply Brief at 4. The LAPD's telephone directory specifically lists LAPRAAC as an entry in its training division. The LAPD's website history of the Police Academy includes information concerning the LAPRAAC as an integral part of the Police Academy's history. Finally, and more importantly, the LAPD's website refers inquiries about purchasing LAPD memorabilia to the LAPRAAC.

8

The evidence in this case demonstrates a relationship between applicant and the LAPD that is historical and not "mere folklore." It is substantial to the extent that it involves the training of LAPD police officers in association with applicant as well as the use and maintenance of applicant's real estate. Finally, while the details are not entirely clear, both parties seem to have accepted this arrangement because applicant operates its shop in facilities shared with the LAPD and the LAPD refers inquiries regarding LAPD merchandise to the LAPRAAC.

Based on this evidence, we cannot say that the evidence supports a conclusion that applicant's mark falsely suggests a connection with the LAPD. Instead, the evidence suggests that there is a substantial commercial connection between applicant and the LAPD. The evidence from the LAPD supports applicant's argument that the LAPD "openly advanced the commercial activities of Applicant." Reply Brief at 4. Clearly, applicant is no interloper trading on LAPD's slogan. The slogan was first developed as the motto of the Los Angeles Police Academy that was located on applicant's grounds and with which applicant has been closely associated.[12] Applicant and the LAPD have a

---

[12] However, the evidence does not support applicant's argument that the Police Academy and LAPRAAC are virtually synonymous.

9

long history of a "symbiotic" relationship.  Because there is an actual commercial connection between applicant and the LAPD, the record does not demonstrate that the mark *falsely* suggests a connection with the LAPD.

The next issue in this case is whether applicant is the owner of the mark.  The examining attorney maintains that:

> [A]pplicant is a distributor of goods, such as mugs, badge replica and clothing that bear the motto of the Los Angeles Police Department, TO PROTECT AND TO SERVE.  The applicant has presented no evidence such as there being a parent and wholly owned subsidiary relationship between the distributor and the manufacturer that it is merely a distributor of, to refute the evidence that it is merely a distributor of goods bearing the motto of the Los Angeles Police Department.

Examining Attorney's Brief at 7.

The examining attorney's argument seems to rest on the fact that the motto "To Protect and To Serve" is the official motto of the LAPD as well as the fact that applicant identifies itself as the exclusive distributor for items bearing the LAPD name.  However, the mere fact that applicant is the distributor of goods is not

---

Applicant argues that, since they are the same, it should be considered the first user of the slogan TO PROTECT AND TO SERVE. In re Nuclear Research Corp., 16 USPQ2d 1316 (TTAB 1990).  The history of the slogan supports the conclusion that the slogan was developed as the result of a contest in the internally produced Los Angeles Police Department magazine, BEAT, in 1955.  LAPD website, "The LAPD motto was developed from a Contest."

necessarily fatal to its claim of ownership of the mark. 2 *McCarthy on Trademarks and Unfair Competition*, § 16:46 (4th ed. 2003) ("[O]ne who only distributes goods made by another can be the 'owner' of a trademark which the distributor places on the goods to identify the distributor"). Applicant is not a distributor of LAPD-produced goods with the TO PROTECT AND TO SERVE slogan. There is no evidence that the LAPD is producing goods of this nature. Indeed, the LAPD's website indicates that it is not the source of goods of this type. See LAPD website "Miscellaneous Information" (LAPD is "unable to provide any uniform items to the public. However, shoulder patches and other memorabilia may be purchased by visiting the [LAPRAAC]").

Applicant claims that it controls the nature and quality of the goods and that it affixes the mark to the goods. This is not a case where applicant is distributing the "goods of a manufacturer or producer." In re Bee Pollen from England Ltd., 219 USPQ 163, 166 (TTAB 1983). Applicant is the source of the goods and the party that the examining attorney alleges is the owner of the mark (LAPD) denies that it is the source of goods of this nature sending purchasers for these goods to applicant.

11

The examining attorney apparently considers the LAPD's ownership rights in the motto to be very broad. "The examining attorney should accept the applicant's statement regarding ownership of the mark unless it is clearly contradicted by information in the record." TMEP § 1201.01 (2003). We are reluctant to resolve this question adverse to applicant in an ex parte proceeding when applicant has presented a plausible explanation that it is the owner of the mark for which it seeks registration.

We conclude by observing that this is an unusual case that perhaps raises more questions that it answers. It is clear that the motto TO PROTECT AND TO SERVE is the official motto of the Los Angeles Police Department. It is also apparent that applicant and the LAPD have had a long and close relationship. However, we are faced with only two fairly narrow issues, i.e. whether applicant owns the mark and whether the mark, as used on applicant's goods, falsely suggests a connection with the LAPD. As set out above, we cannot say that applicant is not the owner of this mark or that the mark as used on the goods *falsely* suggests a connection with the LAPD. Those are the only issues we decide.

Decision: The refusals to register are reversed.